UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAREN J. KOLOZS,

    Plaintiff,

v.                                                                    Case No.:  2:22-cv-418-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Karen Kolozs sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits. (Doc. 1.)[1] For the reasons below, the Commission's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 15; Doc. 16; Doc. 17) and are not fully repeated here. In short, Kolozs filed for disability insurance benefits claiming she could not work because of a cancer diagnosis and back problems. (Tr. 217.) After her

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

application was denied, Kolozs sought review by an administrative law judge ("ALJ"). (Tr. 15.)

Following a hearing, the ALJ agreed that Kolozs was not disabled. (Tr. 17, 30.) To make this determination, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[2] The ALJ found that although several of Kolozs's impairments qualified as severe, she retained the residual functional capacity ("RFC") to engage in some work with restrictions:

> [She can] lift and carry 10 pounds occasionally and 5 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for two hours in an eight hour workday; no operation of foot controls; permitted to stand and stretch after 30 minutes of work while being off task for one minute; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, and crouching; no crawling; and no exposure to hazardous machinery or unprotected heights.

---

[2] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

(Tr. 23.) After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Kolozs could perform her past relevant work either as a case worker or a medical social worker. (Tr. 29.) Thus, Kolozs was not disabled as that term is defined in this context. (Tr. 29-30.)

Kolozs further exhausted her administrative remedies, and this lawsuit timely followed. (Doc. 15 at 2-3.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering

evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Kolozs argues the ALJ erred in five ways. First, she says "the ALJ failed to include mental limitations in the RFC assessment." Next, she says the RFC would require her to sit longer than the 6-hour limit it imposes. Kolozs also claims the ALJ did not properly consider her muscle spams when forming the RFC. Then, she argues substantial evidence does not support her ability to perform past relevant work. And finally, Kolozs alleges the ALJ violated Medical-Vocational Rule 201.06 "which directs a finding of disabled at step five if certain conditions are met." (Doc. 15 at 1-2.) The Court addresses each issue in turn.

4

### A. Mental Limitations

In step four of the analytical process, the ALJ assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC, defined as the most the claimant can still do despite her limitations, is based on an evaluation of all the relevant evidence in the record. *See id.* §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Put simply, the ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another" when building the RFC. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Thus, when an ALJ finds mild mental limitations in step 2 of the sequential process, he must have a "real discussion of how the mental condition affected [the claimant's] RFC." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.*

Here, the ALJ properly considered Kolozs's mild mental limitations found in step 2. (Tr. 19-20.) First, the ALJ noted that the RFC reflected his impression of Kolozs's mental limitations from step 2. (Tr. 20.) Then, the ALJ stated he accounted for "all symptoms" when building the RFC. (Tr. 23.) The ALJ also pointed to evidence in the record of minimal or no mental health limitation, such as Kolozs reporting no psychiatric symptoms more than once

5

and multiple psychiatric examinations showing normal mood and affect. (Tr. 25-26.) Finally, The ALJ took care to discuss the opinion of Dr. Ruth Dupont which included "significant mental limitations." (Tr. 28, 619.) He found Dr. Dupont's opinion to be unpersuasive because it is "inconsistent with her treatment notes that have shown the claimant to have good judgment, normal mood and affect, normal recent and remote memory, and to be oriented." (Tr. 28.) The forgoing makes up a "real discussion" of Kolozs's mental functioning as required by *Schink* and cases applying it.

Thus, there is substantial evidence to support the ALJ's conclusion: "Overall, the claimant's treatment notes reflect her being alert and do not indicate any significant problems with distractibility." (Tr. 28.) Kolozs may believe this evidence conflicts with the ALJ's prior observations that her medication makes her tired and "a little foggy" (Tr. 22) and that she has a mild limitation in the area of concentrating, persisting, or maintaining pace. (Doc. 15 at 8.) But it is the ALJ's job to resolve conflicts by weighing the evidence—not the Court's. *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973) ("Resolution of conflicts in the evidence, including conflicting medical opinions and determinations of credibility are not for the courts; such functions are solely within the province of the Secretary."). The question is simply whether there is enough supporting evidence to satisfy a reasonable mind. Here, there is.

6

**B. The RFC's Sit/Stand Option**

Kolozs's next claim is best summed up by reference to the section's header:

> While the ALJ stated that the plaintiff is limited to 6 hours of sitting in an 8-hour workday and 2 hours of standing/walking in an 8-hour workday, the RFC limitation of the plaintiff to alternate 30 minutes of sitting with 1 minute of standing would result in sitting for longer than six hours in an 8-hour workday.

(Doc. 15 at 11-12.) This argument is flawed. The RFC does not limit Kolozs from standing for more than one minute at a time. And it does not assume that every minute not sitting must be off-task. In relevant part, the RFC simply says that Kolozs cannot do more than "sit for six hours in an eight hour workday; stand and/or walk for two hours in an eight hour workday"; and must be "permitted to stand and stretch after 30 minutes of work while being off task for one minute." (Tr. 23.) There is no internal conflict here because Kolozs could theoretically work from a sitting position for 30 minutes and then a standing position for 10 minutes. Alternating her orientation in such a way throughout the day would result in 6 hours of sitting and 2 hours of standing or walking. Thus, she could work an 8-hour workday under the RFC's limitations, even before accounting for any time she could be permitted to spend off-task, like lunch and restroom breaks. Because these limitations were adequately expressed to the vocational expert, the Court agrees with the

7

Commissioner: "[a] common sense reading of the ALJ's RFC finding . . . provides context that there was no inconsistency." (Doc. 16 at 8.)

### C. Muscle Spasms

Kolozs next claims "the ALJ failed to assess the effect of [her] muscle spasms on her ability to perform sedentary work." (Doc. 15 at 14.) Specifically, "[w]hile the ALJ recognized the Plaintiff's complaints of muscle spasms during multiple visits, (Tr. 26-28), the ALJ never addressed the effect of muscle spasms on the Plaintiff's RFC and did not otherwise explain why the muscle spasms do not affect the Plaintiff as much as she alleged." (*Id.* at 15.)

The Eleventh Circuit recently reiterated the standard used to address an argument such as this one, based on "pain or other subjective symptoms":

> A claimant may establish that [s]he has "a disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In such a case, the claimant must show evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once a claimant has made this showing, the Commissioner "must then evaluate the intensity and persistence of [the claimant's] symptoms" in light of "all available evidence," including the claimant's testimony. 20 C.F.R. § 404.1529(c)(1). The Commissioner "will not reject" a claimant's statements "solely because the available objective medical evidence does not substantiate" the statements. *Id.* § 404.1529(c)(2). Instead, the ALJ considers several "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain and other symptoms." *Id.* § 404.1529(c)(3)(i)-(vii).

> If a claimant provides subjective testimony on the severity of his symptoms, as [the claimant] did here, the ALJ "must articulate explicit and adequate reasons" for rejecting the complaints. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ's "credibility determination does not need to cite particular phrases or formulations[,] but it cannot merely be a broad rejection" that fails to consider a claimant's "medical condition as a whole." *Dyer*, 395 F.3d at 1210-11 (cleaned up). We will not disturb "[a] clearly articulated credibility finding with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

*Taylor v. Comm'r of Soc. Sec.*, No. 21-12804, 2022 WL 1634086, at *5-6 (11th Cir. May 24, 2022). Here, the ALJ reiterated this formula, followed it, and cited substantial evidence to support his findings. (Tr. 23, 27-28.) He noted Kolozs has "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms." (Tr. 23.) Then, "after careful consideration of the evidence," the ALJ concluded Kolozs's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23.) Thus, the question is whether the ALJ's explanation for this credibility finding is "clearly articulated . . . with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

The ALJ could not have been clearer: "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the longitudinal evidence of record." He then cited this evidence. For example, he pointed out that treatment notes reflect

9

significant improvement in her back pain with chiropractic treatment. (Tr. 27.) Kolozs also had minimal treatment for any of her severe impairments over a two-year span. (Tr. 27.) The ALJ noted that Kolozs engaged in some work activity and physical exercise two to three times per week. (Tr. 27-28.) And finally, he highlighted evidence suggesting Kolozs reduced her pain medication and even stopped taking it at one point with no apparent side effects. (Tr. 28.) This is just some of the objective evidence that provides the support for the ALJ's reasoning.

Once again, Kolozs identifies evidence that she believes compels a contrary finding. (Doc. 15 at 14-17.) But, as noted, that argument would require the Court to re-weigh the evidence, which it will not do. Kolozs needed to "do more than point to evidence in the record that supports [her] position; [she needed to] show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604. Because she did not, the Court affirms on this point too.

### D. Past Relevant Work

The ALJ ultimately found that Kolozs could return to her past relevant work as a caseworker and medical social worker. (Tr. 29.) In doing so, he relied on the testimony of a vocational expert who considered the RFC's limitations. (Tr. 29.) Kolozs's fourth objection is twofold. First, she claims she did not perform the "caseworker" job long enough to learn to do it. (Doc. 15 at 20-21.)

Second, she asserts the medical social worker job should have been considered "composite work" and thus considered as she actually performed it and not as it is generally performed in the national economy. (*Id.* at 21-22.) The Court disagrees with her on both points.

*1. Caseworker*

As for Kolozs's work experience as a caseworker, the ALJ stated:

> The claimant reported working at Lutheran Senior Life Care between 2005 and 2008 (23E). The record reflects the claimant having earnings above substantial gainful activity during this time (7D). The vocational expert classified the claimant's past relevant work as a caseworker (DOT 195.107-010, sedentary, SVP 7).

Kolozs essentially claims that the earnings reports show her work as a caseworker in 2005 and 2006 to be minimal and that she did not work as a caseworker in 2008. (Doc. 15 at 20-21.) As a result, she "performed this job at [the required level] for a year or a little over a year at best." (*Id.* at 21.) And because the Dictionary of Occupational Titles ("DOT") rates the job of caseworker as requiring vocational preparation of more than two years, she did not perform the work long enough to learn to do the job. (*Id.*) Thus, it should not count as relevant past work.

There are a couple of problems with this reasoning. First, the ALJ relied on Kolozs's *own* statements—made more than once—that she worked as a caseworker between September 2005 and September 2008. (Tr. 29, 278, 291.) Now she presents conflicting evidence in the form of earning statements. This

11

argument suffers from the same defects as above—Kolozs asks the Court to consider evidence supporting her claim while discounting unhelpful evidence. The ALJ already properly resolved the conflicting evidence. That he did so with Kolozs's own statements is a sure sign that he is supported by substantial evidence. And because the ALJ reasonably found Kolozs performed this past work for more than the requisite two years, he did not err in finding she worked there long enough to learn to do the job.

Second, a claimant may acquire sufficient familiarity with the job through means other than "on-the-job" training. POMS DI 25001.001 (A)(77).[3] For example, she can gain "essential experience in other jobs" and "education figures heavily" into the calculation. *Id.* In Kolozs's case, she earned experience in her four-year college degree before she began her job as a caseworker. (Tr. 23, 218.) Thus, substantial evidence supports the VE's conclusion (and the ALJ's subsequent reliance) that Kolozs gained enough experience to consider her role as a caseworker "past relevant work."

*2. Medical Social Worker*

Kolozs's argument about her work as a medical social worker is slightly different. She relies on *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951 (11th Cir. 2018) for the proposition that "composite" jobs must be evaluated as the

---

[3] Taken from the Social Security Administration's Program Operation's Manual System, which the ALJ must consider. *See* 20 C.F.R. §§ 404.1601-1603.

12

claimant actually performed them, and not as they are generally performed in the national economy. *See* SSR 82-61 at *2. "A composite job is one that has significant elements of two or more occupations." *Smith*, 743 F. App'x at 954. The claimant bears the burden of proving that the "main duties" of the position fall into multiple DOT occupations. *Id*. If she carries this burden, then the ALJ must "must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." *Id*.

In *Smith*, the claimant asserted that his role as a telephone clerk was a composite job because it also involved hanging rent notices. *Id*. But the Eleventh Circuit found the claimant did not carry his burden of proving the job was composite for two reasons. First, he did not establish that the extra responsibilities of hanging rent notices was one of the "main duties" of his job or detail how much time those responsibilities took. *Id*. And second, the claimant did not identify what other job in the DOT he was performing by hanging rent notices. *Id*. Thus, the ALJ did not err in not considering the telephone clerk position a composite job.

*Smith* is analogous to Kolozs's case. Although Kolozs concedes that she spent the first six years of the relevant time-period working as a medical social worker, she claims two responsibilities in her final two years made the job a "composite" one. (Doc. 15 at 21.) First, she asserts that she spent three fourths

13

of her time on marketing. (*Id.*) She mentioned this to the ALJ and vocational expert (Tr. 42-43), but otherwise fails to argue that marketing duties should not be considered part of the role of a medical social worker. Nor does she show what other DOT occupation the marketing tasks would fall under.

Second, Kolozs alleges "there was a third part to this job which involved moving furniture and making beds for getting room ready for new admissions." (Doc. 15 at 21.) This time, she properly argues that these responsibilities do not belong to a medical social worker and she even provides their proper DOT classification. (*Id.* at 21-22.) But she does not carry her burden for two reasons. First, she gives no testimony on how much time she spent moving furniture and making beds. Second, she did not share these responsibilities with the ALJ and vocational expert in her testimony. Thus, they would be hard pressed to believe moving furniture and making beds were part of her "main duties."

In sum, Kolozs failed to carry her burden for the same reasons as the claimant in *Smith*. But there are other shortcomings too. For example, even if the last two years of her job were "composite," she concedes that the first six years were not. Thus, the ALJ correctly identified her ability to return to the work she did for the first six years, and any error about the last two years would be harmless.

Moreover, Kolozs did not challenge the vocational expert's classification of her role during this period as medical social worker rather than a composite

14

job. This effectively waived her argument. *See Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 16555990, at *3 (M.D. Fla. Sept. 23, 2022); *see also New v. Comm'r of Soc. Sec.*, No. 5:12-CV-211-OC-18PRL, 2013 WL 3804846, at *3 (M.D. Fla. July 8, 2013) ("As an initial matter, the Commissioner correctly notes that the Plaintiff did not raise this issue to the ALJ, nor did her attorney object to the VE's testimony identifying Plaintiff's prior work as a housekeeper as past relevant work. Unfortunately for Plaintiff, because she failed to raise this issue to the ALJ or even object to the VE's testimony, the ALJ was not obligated to specifically address the concerns—or rather, arguments—that Plaintiff now raises."); *Whittemore v. Comm'r of Soc. Sec.*, No. 3:09-CV-1242-J-MCR, 2011 WL 722966, at *5 (M.D. Fla. Feb. 23, 2011) (finding that when the plaintiff did not raise the issue to the ALJ as to whether her prior job as a real estate agent qualified as substantial gainful activity and did not object to the VE's "past relevant work summary," which included the job of real estate agent, that the ALJ was not required to specifically discuss his reasons for concluding that the plaintiff's past work as a real estate agent qualified as substantial gainful activity). Thus, without an objection or other reason to doubt his credibility, the vocational expert's experience provides substantial evidence to support the ALJ's reliance on his testimony. *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010).

### E. Medical-Vocational Rule 201.06

Kolozs's final argument is easily addressed. She claims "the ALJ circumvented the application of Medical-Vocational Rule 201.06." (Doc. 15 at 22-24.) But Kolozs admits this rule only applies under certain conditions, one of which is that the ALJ finds the claimant "unable to perform past relevant work." (*Id.* at 22.) Eleventh Circuit case law agrees. *Delmonte v. Comm'r, Soc. Sec. Admin.*, 585 F. App'x 774, 776 (11th Cir. 2014) ("[T]hose guidelines apply only if the administrative law judge determines that a claimant is incapable of performing his past relevant work at step four of the evaluation"). Of course, in Kolozs's case, the ALJ found she could return to her past relevant work. (Tr. 29.) And, as explained above, the ALJ did not err in making such a determination. Thus, the argument is moot. The Court can hardly fault Kolozs for making it, however. If the ALJ had erred at step four then perhaps Medical-Vocational Rule 201.06 would have been relevant after all.

### IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings and the correct standards were applied. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Karen J. Kolozs and close the file.

**ENTERED** in Fort Myers, Florida this June 28, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record